**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\* \* \***

| | | |
|---|---|---|
| KEVIN BISHOP, | ) | Case No.: 2:08-cv-00726-RLH-GWF |
| | ) | |
| Plaintiff, | ) | **O R D E R** |
| | ) | |
| vs. | ) | (Motion to Dismiss–#102; Motion for |
| | ) | Summary Judgment–#136; Motion to |
| JOHN E. POTTER | ) | Dismiss–#169; Motion to Dismiss–#171; ) |
| Post Master General | ) | |
| United States Postal Service, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is Defendant John E. Potter's **Motion to Dismiss** (#102), filed April 19, 2010.  The Court has also considered Plaintiff Kevin Bishop's Opposition (#133), filed June 7, 2010, and Potter's Reply (#139), filed June 17, 2010.

Also before the Court is Potter's **Motion for Summary Judgment** (#136), filed June 11, 2010.  The Court has also considered Bishop's Opposition (#194, August 24, 2010) and Erratum (#198. August 25, 2010), and Potter's Reply (#203), filed September 3, 2010.

Also before the Court is Defendant United States Postal Service's ("Postal Service") **Motion to Dismiss** (#169), filed July 28, 2010.  The Court has also considered Bishop's Opposition (#174), filed July 28, 2010, and USPS' Reply (#178), filed July 30, 2010.

1

Also before the Court is Defendants Jeanne Wingate, Russell Warr, and Sandra Anderson's (collectively referred to as the "Federal Defendants"), in their official capacities, **Motion to Dismiss** (#171), filed July 22, 2010.  The Court has also considered Bishop's Opposition (#187) filed August 9, 2010, and the Federal Defendants' Reply (#191), filed August 13, 2010.  All remaining named defendants joined this motion on August 10, 2010.  (#188)

Finally, before the Court is Bishop's **Motion to Seek Relief from Providing Two Copies of Opposition/Response to USPS Defendants' Motion for Summary Judgment** (#192), filed August 24, 2010.

## BACKGROUND

This case arises out of Bishop's short employment with and termination from the United States Post Office in St. George, Utah.  Except where otherwise stated, the following statements of fact are those alleged by Bishop.  Bishop was hired by the St. George post office on or about September 21, 2002, as a Part Time Flexible mail carrier.  ("PTF") Bishop was fired less than 60 days later.  His position was dependent on satisfactory performance within the standard 90-day probationary period.  Bishop received training in Salt Lake City and St. George, Utah.  Bishop, however, complains that the training he received was insufficient and states that he continuously informed his supervisor that he received insufficient training and encountered other problems in his job that impeded his progress, such as old keys and missing markers.  (Nonetheless, Bishop repeatedly claims that his performance was perfect.)  According to various postal employee affidavits (from supervisors and coworkers), however, Bishop received more training and assistance than other PTF letter carriers, including those hired near the same time he was hired, yet he failed to meet performance expectations.

Bishop further alleges that certain co-workers made comments related to age and to religion.  Specifically, Bishop alleges that Del Ray Graves, a Postal Service delivery person, told Bishop that he doubted the Postal Service would keep Bishop because employment standards change at age 55.  Bishop also states that multiple people asked him where he went to church and

thus discovered that he was not a member of the Church of Jesus Christ of Latter-day Saints ("LDS") as he claims most other St. George Post Office employees were.  After this Bishop describes his coworkers as being cold and generally unhelpful.

When his sixty day review approached, Warr states that he and the St. George Postmaster, Sandra Anderson, discussed Bishop's performance and decided to let him go.  They did so.  Soon thereafter, Bishop filed an employment discrimination claim with the Postal Service's Equal Employment Opportunity division.  His claim eventually went to the Equal Employment Opportunity Commission and an Administrative Law Judge.  The Administrative Law Judge dismissed Bishop's claims without a hearing in a manner similar to either a motion to dismiss or summary judgment.  Bishop claims, without providing evidence, that the Postal Service destroyed documents, altered documents, and otherwise engaged in nefarious activities during this period.  He also claims that the EEO and the EEOC discriminated against him in their handling of his claims and it appears that he alleges that the Administrative Law Judge discriminated against him as well.  After the EEOC Administrative Law Judge dismissed his case, Bishop filed suit in this Court.

In his Second Amended Complaint, Bishop alleges employment discrimination based on age and religion, hostile work environment, retaliation, fraud, and conspiracy.  Potter, as Postmaster General, has since filed a Motion to Dismiss (Dkt. #102) and a Motion for Summary Judgment (Dkt. #136).  The remaining defendants have moved to dismiss themselves from the case as improper defendants.  (Dkt. ##169, 171, 200)  For the reasons discussed below, the Court dismisses Bishop's fraud and other tort claims and grants summary judgment as to Bishop's various employment discrimination claims.

## DISCUSSION

Due to the nature of Bishop's claims and the realities of civil procedure, the Court will first address Bishop's claims that the Court dismisses using Fed. R. Civ. P. 12(b)(1).  These are the claims against improper defendants and tort claims.  The Court will then address the claims

AO 72
(Rev. 8/82)

1   for which the Court grants summary judgment.  These are the discrimination and related claims

2   against the Postal Service.  Finally, the Court will address the remaining claims, which the Court

3   dismisses under Rule 12(b)(6).

4   **I.      Lack of Subject Matter Jurisdiction**

5         **A.      Legal Standard**

6               Under Fed. R. Civ. P. 12(b)(1), a claim may be dismissed for lack of subject matter

7   jurisdiction.  The purpose of a complaint is to give the defendant fair notice of the factual basis of

8   the claim and of the basis for the court's jurisdiction.  *See* Fed. R. Civ. P. 8; *Skaff v. Meridien N.*

9   *Am. Beverly Hills, LLC.*, 506 F.3d 832, 843 (9th Cir. 2007).  When reviewing a Rule 12(b)(1)

10  motion, the court views the allegations in the plaintiff's complaint as true.  *Wolfe v. Strankman*,

11  392 F.3d 358, 362 (9th Cir. 2004).  Thus, the plaintiff has the burden of proving jurisdiction to

12  survive the motion.  *Tosco Corp. v. Cmtys for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

13  However, a district court may consider evidence outside the pleadings when ruling on a Rule

14  12(b)(1) motion.  *Farr v. United States*, 990 F.2d 451 (9th Cir. 1993).

15        **B.      The Improper Defendants**

16              Bishop has named multiple improper defendants in this case, who the Court now

17  dismisses.  The only proper defendant in a suit against a federal employer for alleged violations of

18  employment discrimination laws is the head of the federal agency that allegedly discriminated

19  against the defendant.  *See Romain v. Shear*, 799 F.2d 1416, 1418 (9th Cir. 1986); *see also Caul v.*

20  *Winter*, No. 06-cv-2096-WHQ-LSP, 2007 WL 2712302, at *5 (S.D. Cal. Sep. 13, 2007) ("A court

21  will dismiss the parties from a complaint where a plaintiff files an employment discrimination

22  action against persons other than the head of the department, agency or unit.") (internal quotations

23  omitted).  Thus, the Court lacks subject matter jurisdiction over, and must dismiss, any improperly

24  named defendant.

25              Here, the Postmaster General is the only appropriate defendant for Bishop's

26  employment discrimination claims.  Despite this limitation, Bishop has named various other

1    people as defendants in his suit.  The Court dismisses these defendants from the discrimination

2    claims because the Court lacks jurisdiction over them in a discrimination case.

3              Furthermore, "the United States is the only proper defendant in cases alleging

4    tortious conduct" by a United States agency or employee in the scope of his employment.  *Corey v.*

5    *McNamara*, 409 F. Supp.2d 1225, 1228–29 (D. Nev. 2006) (citing *FDIC v. Craft*, 157 F.3d 697,

6    706 (9th Cir. 1998) and *Kennedy v. United States Postal Service*, 145 F.3d 1077, 1078 (9th Cir.

7    1998)).  The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 ("FTCA"), provides the

8    "exclusive remedy for tortious conduct by the United States, and it only allows claims against the

9    United States[;] . . . an agency itself [or a federal employee] cannot be sued under the FTCA."

10    *Craft*, 157 F.3d at 706 (citations omitted); *see also United States v. Smith*, 499 U.S. 160, 163

11    (1991) (the FTCA "establishes [] absolute immunity for government employees . . . by making an

12    FTCA action against the Government the exclusive remedy for torts committed by Government

13    employees in the scope of their employment.") Here, Bishop has failed to name the United States

14    as a defendant in his tort claims.  Rather, Bishop improperly named federal agencies and

15    employees who cannot be sued under the FTCA.  Therefore, the Court must dismiss each

16    defendant from Bishop's tort claims for lack of jurisdiction.  Since this leaves no remaining

17    defendants for Bishop's tort claims, his tort claims are dismissed in their entirety.

18    **C.**    **Fraud**

19              Bishop fails to state valid fraud claims for multiple reasons beyond naming

20    improper defendants.  The Court will quickly address some of these issues.  Even if Bishop had

21    named the United States as defendant, the Court would dismiss the fraud claims for lack of subject

22    matter jurisdiction.  Tort claims, including fraud, must be made against the United States, not the

23    agency involved or the federal employee involved.  *Craft*, 157 F.3d at 706.  But more importantly,

24    the doctrine of sovereign immunity applies to Bishop's fraud claim as the federal government has

25    not waived sovereign immunity.  Applying the Federal Tort Claims Act, the Ninth Circuit has held

26    that "claims against the United States for fraud or misrepresentation by a federal officer are

AO 72
(Rev. 8/82)

1   absolutely barred by 28 U.S.C. § 2680(h)." *Owyhee Grazing Ass'n, Inc. v. Field*, 637 F.2d 694,

2   697 (9th Cir. 1981).  Without a waiver of sovereign immunity, this Court lacks jurisdiction to hear

3   Bishop's fraud claim.  Since the Court lacks jurisdiction to hear the claim, it would be dismissed

4   for lack of subject matter jurisdiction regardless of the named defendant.

5   **II.     Summary Judgment**

6          **A.     Legal Standard**

7                  The purpose of summary judgment is to avoid unnecessary trials when there is no

8   dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d

9   1468, 1471 (9th Cir.1994).  All reasonable inferences are drawn in favor of the non-moving party.

10   *In re Slatkin*, 525 F.3d 805, 810 (9th Cir.2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

11   242, 244 (1986)).  Summary judgment is appropriate if "the pleadings, the discovery and

12   disclosure materials on file, and any affidavits show that there is no genuine issue as to any

13   material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R.

14   Civ. P. 56(c)).  Where reasonable minds could differ on the material facts at issue, however,

15   summary judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

16   1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the

17   court must view all evidence and any inferences arising from the evidence in the light most

18   favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

19                  The moving party bears the burden of informing the court of the basis for its

20   motion, together with evidence demonstrating the absence of any genuine issue of material fact.

21   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the

22   party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must

23   set forth specific facts showing there is a genuine issue for trial.  *Anderson*, 477 U.S. at 248.

24   Although the parties may submit evidence in an inadmissible form, only evidence which might be

25   admissible at trial may be considered by a trial court in ruling on a motion for summary judgment.

26   Fed. R. Civ. P. 56(c).

AO 72
(Rev. 8/82)

1    Further, "[m]otions for summary judgment and responses thereto shall include a

2  concise statement setting forth each fact material to the disposition of the motion which the party

3  claims is or is not genuinely in issue, citing the *particular portions* of any pleading, affidavit,

4  deposition, interrogatory, answer, admission, or other evidence upon which the party relies."  LR

5  56-1 (emphasis added).  Where the parties do not cite to their evidence, that evidence need not be

6  examined and may be excluded.  *Orr v. Bank of Am.*, 285 F.3d 764, 774–75 (9th Cir. 2002).

7  Therefore, "[t]he [C]ourt need only resolve factual issues of controversy in favor of the non-

8  moving party where the facts specifically averred by the non-moving party contradict the facts

9  specifically averred by the movant."  *Ryan's Express Transp. Serv., Inc. v. Caterpillar, Inc.*, No.

10  2:07-cv-0008-KJD-GWF, 2009 WL 803129, at *3 (D. Nev. March 24, 2009) (citing *Lujan v. Nat'l*

11  *Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).  In other words, "judges are not like pigs, hunting for

12  truffles buried in briefs," *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003), and

13  it is not the Court's task "'to scour the record in search of a genuine issue of triable fact.'"  *Keenan*

14  *v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247,

15  251 (7th Cir.1995).  The Court, instead, relies "'on the nonmoving party to identify with

16  reasonable particularity the evidence that precludes summary judgment.'"  *Id.*

17       **B.    Discrimination, Hostile Work Environment and Retaliation**

18       In employment discrimination and retaliation cases, plaintiffs generally must

19  present a prima facie case to survive summary judgment.  *See Vasquez v. County of Los Angeles*,

20  349 F.3d 634, 640 (9th Cir. 2003) (discussing Title VII disparate treatment and retaliation claims).

21  If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to articulate a

22  legitimate, nondiscriminatory reason for the employment action.  *Id.* at 640.  If the defendant

23  articulates such a reason, the burden shifts back to the plaintiff to show that the employer's reason

24  is merely a pretext for discrimination.  *Id.*  At all times, the ultimate burden of persuasion remains

25  with the plaintiff.  *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796–97 (9th Cir. 1982) (citing *Texas*

26  *Dept. of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  Age discrimination claimants must

AO 72
(Rev. 8/82)

1  meet an even higher "but-for" standard, showing that the employer would not have taken the

2  adverse action but for the plaintiff's age.  *Gross v. FBL Fin. Serv., Inc.*, __ U.S. __, 129 S. Ct.

3  2343, 2349-51 (2009) (applying a "but-for" test in the age discrimination context).

4         As to the next four claims, Bishop has not carried his burden to show that an actual,

5  material dispute exists through any properly cited "affidavits or admissible discovery material."

6  *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  Instead, Bishop continues to rely

7  on the allegations in his complaint and his beliefs that the circumstances he describes amount to

8  discrimination based on age, religion or both and that he was harassed and retaliated against.

9  Although Bishop does provide some facts as to his work conditions (some of which he himself

10  contradicts in his deposition and other statements), these do not come close to being sufficient for

11  a prima facie case of discrimination and are not material, disputed facts.  *See Anheuser-Busch, Inc.*

12  *v. Nat'l Beverage Distr.*, 69 F.3d 337, 343 (9th Cir. 1995) ("A material fact is one which might

13  affect the outcome of the case under governing law.")  In sum, Bishop has "alleged—but [] not

14  shown—that [he] is entitled to relief."  *Iqbal*, 129 S. Ct. at 1949 (quotations omitted).  While the

15  Court empathizes with Bishop's beliefs, the evidence that he has produced does not demonstrate

16  these causes of action.  The Court, therefore, grants summary judgment as to these claims.

17  **1.     Disparate Treatment (Discrimination) Claims**

18         To succeed on a disparate treatment/discrimination claim, a plaintiff must show

19  that: (1) plaintiff belongs to a protected class (2) plaintiff was performing according to his

20  employer's legitimate expectations; (3) plaintiff suffered an adverse employment action; and (4)

21  other employees with similar qualification were treated more favorably.  *Vasquez*, 349 F.3d at 640

22  n.5 (9th Cir. 2003).  Bishop has failed to show triable issues of fact as to his claims.

23  **i.     Age Discrimination**

24         Bishop has not presented any admissible, material evidence to support a cause of

25  action for age discrimination.  The only cited evidence that Bishop gives is a single hearsay

26  statement made by a coworker, not even someone with management authority but just another mail

8

1   carrier.  This is insufficient evidence to maintain an age discrimination action and would likely be

2   inadmissible.  Furthermore, the Postal Service in St. George kept at least one other probationary

3   PTF letter carrier who was over 40 and fired one who was under 40 during this time frame.  With

4   the evidence that Bishop has submitted, he cannot show that other similarly situated employees

5   were treated more favorably on the basis of age or that he performed adequately.  Therefore, the

6   Court grants summary judgment as to Bishop's age discrimination claim.

7                           **ii.      Religious Discrimination**

8                  Bishop uses the majority of his complaint to claim and allege religious

9   discrimination, which Title VII of the Civil Rights Act of 1964 forbids.  42 U.S.C. § 2000e-2(a)

10  (2006).  He fails, however, to demonstrate through admissible evidence a prima facie case that he

11  was discriminated against on the basis of his religion or lack thereof.  Bishop largely bases this

12  claim on what appears to be, at most, casual references to religion in normal conversation and his

13  dislike of how the post office was managed.  Bishop has not presented evidence that these co-

14  workers had authority to speak for the Postal Service or that religion was an issue (or even

15  discussed) during any decision making process.  Further, Bishop has not shown evidence that the

16  people with the authority to take employment actions knew of Bishop's religious affiliation or lack

17  thereof.  Bishop admitted in his 2005 deposition that he didn't know whether Warr knew his

18  religious affiliations or lack thereof, he simply believed so.  (Dkt. #136, Bishop Dep. Ex. 10,

19  38–39).  Bishop's later assertions that Warr knew he was not LDS are not based on factual

20  references to the record and contradict Bishop's own earlier testimony.  Finally, the Postal Service

21  in St. George retained two other probationary PTF letter carriers, Wingate and Schroeder, who,

22  like Bishop, were not members of the LDS Church and Bishop himself was replaced with another

23  probationary PTF letter carrier, Tolli, who also was not LDS.  With Bishop's lack of evidence and

24  the Defendants' proffered evidence, no reasonable fact finder could conclude that the Postal

25  Service treated other similarly situated employees more favorably than Bishop on a religious basis

26  /

AO 72
(Rev. 8/82)

1    or that Bishop performed his job at an adequate level.   Therefore, the Court grants summary

2    judgment on Bishop's religious discrimination claim.

3                    **2.        Harassment – Hostile Work Environment**

4                    Bishop's next cause of action is "harassment," which the Court interprets as a

5    hostile work environment claim.  To succeed on a hostile work environment claim, Bishop must

6    show that: (1) he was subjected to verbal or physical conduct of a harassing nature that was based

7    on a protected characteristic; (2) the conduct was unwelcome; and (3) the conduct was sufficiently

8    severe or pervasive to alter the conditions of his employment and create an abusive work

9    environment.  *See Kang v. U. Lim Am., Inc.*, 296 F.3d 810 (9th Cir. 2002).  To be actionable, a

10   hostile work environment must be both subjectively and objectively offensive.  *Watson v. Las*

11   *Vegas Valley Water Dist.*, 378 F. Supp. 2d 1269, 1275–76 (D. Nev. 2005) (citing *Kortan v. Cal.*

12   *Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000)).  Title VII, which provides for discrimination,

13   hostile work environment, and related retaliation claims, is not "a general civility code for the

14   American workplace" and the Court will not treat it as such.  *Burlington N. and Santa Fe Ry. Co.*

15   *v. White*, 548 U.S. 53 (2006) (quoting *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75

16   (1998)).

17                    Bishop has not provided the Court with sufficient evidence to prevail on a hostile

18   work environment claim.  Bishop continues to claim that he felt unwelcome and did not enjoy his

19   surroundings.  He likely felt that his coworkers were unfriendly, cold and unhelpful.  But this is

20   merely a subjective feeling as Bishop has not presented the Court with any evidence that his

21   environment was objectively offensive, especially considering the evidence of the help that Bishop

22   did receive.  As a matter of law, disagreement over training and operational procedures does not

23   create a hostile work environment.  Neither does casual religious conversation amongst workers or

24   the use of nicknames such as "Brother" or "Sister" amongst coworkers or acquaintances.  To

25   decide otherwise would create a civility code for the workplace that cannot exist in normal society

26   and which the Supreme Court has rejected within the context of Title VII.  Such a code would

1  create rather than alleviate uncomfortable work environments.  Therefore, the Court grants

2  summary judgment as to Bishop's hostile work environment claim.

3         **3.**     **Retaliation**

4         Bishop's retaliation claim fails as a matter of law.  To succeed on a retaliation

5  claim, Bishop must show that he: (1) engaged in a protected activity; (2) suffered an adverse

6  employment action; and (3) that there was a causal link between the first and second elements.

7  *Vasquez*, 349 F.3d at 646.  Bishop, however, does not allege that he took any protected action prior

8  to being fired.  A causal link cannot exist if the employer fired the plaintiff (or took a different

9  adverse employment action) before the plaintiff engaged in protected conduct because a supervisor

10  cannot know of an event that has not occurred.  *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796

11  (9th Cir. 1982) ("Essential to a causal link is evidence that the employer was aware that the

12  plaintiff had engaged in protected activity.")  It appears that Bishop's retaliation claim is, in

13  reality, merely a part of his discrimination claims.  Therefore, the Court grants summary judgment

14  as to the retaliation claim.

15  **III.**     **Failure to State a Claim for which Relief May Be Granted**

16         Bishop further alleges: (i) discrimination arising out of the EEO and EEOC

17  administrative processes that occurred after his termination and (ii) conspiracy.  Neither of these

18  claims are sufficient and they will be dismissed under Rule 12(b)(6).

19       **A.**     **Legal Standard**

20         A court must dismiss a plaintiff's complaint if it "fail[s] to state a claim upon which

21  relief can be granted." Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "a short

22  and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

23  8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require

24  detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic

25  recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

26  (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to rise

1    above the speculative level." *Twombly*, 550 U.S. at 555.  Thus, to survive a motion to dismiss, a

2    complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its

3    face." *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

4            In *Iqbal*, the Supreme Court recently clarified the two-step approach district courts

5    are to apply when considering motions to dismiss.  First, a district court must accept as true all

6    well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the

7    assumption of truth.  *Id.* at 1950.  Mere recitals of the elements of a cause of action, supported only

8    by conclusory statements, do not suffice.  *Id.* at 1949.  Second, a district court must consider

9    whether the factual allegations in the complaint allege a plausible claim for relief.  *Id.* at 1950.  A

10   claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw

11   a reasonable inference that the defendant is liable for the alleged misconduct.  *Id.* at 1949.  Where

12   the complaint does not permit the court to infer more than the mere possibility of misconduct, the

13   complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal

14   quotation marks omitted).  When the claims in a complaint do not crossed the line from

15   conceivable to plausible, plaintiff's complaint must be dismissed.  *Twombly*, 550 U.S. at 570.

16           The Court also notes the well-established rule that *pro se* complaints are subject to

17   "less stringent standards than formal pleadings drafted by lawyers" and should be "liberally

18   construed." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).  Nonetheless, a complaint must

19   contain either direct or inferential allegations concerning "all the material elements necessary to

20   sustain recovery under *some* viable legal theory," *Twombly*, 550 U.S. at 562 (quoting *Car*

21   *Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original), even

22   if the Plaintiff's alleged theory is incorrect.

23       **B.    EEO and EEOC Discrimination**

24           Bishop asserts several discrimination claims based on the EEO and EEOC's

25   administrative processes that occurred after his termination from the Postal Service.  The Title VII

26   employment discrimination statutes, however, protect an employee from discrimination in the

AO 72
(Rev. 8/82)

1    work place by his employer.  The statutes do not create a private cause of action by a plaintiff, who

2    is not an employee of the EEOC, for mishandling his complaint.  *Ward v. EEOC*, 719 F.2d 311,

3    313 (9th Cir. 1983).  Since Bishop was not an employee of the EEOC or the Postal Service at the

4    time of the alleged discriminatory conduct, he cannot maintain a plausible claim that his employer

5    took an adverse action against him based on a protected status.  Therefore the Court dismisses

6    these claims under Rule 12(b)(6).

7            Also, if Bishop desires to assert a different claim based on the EEO/EEOC process,

8    he has done so against improper parties and the Court would not have subject matter jurisdiction.

9    Further, the evidence he has presented would still be insufficient for other types of claims.  From

10   what Bishop states and argues, he is merely unhappy with the results and the standard

11   methodology of the administrative process and does not actually allege misconduct in a legal

12   sense.

13           **C.    Conspiracy**

14           Furthermore, Bishop cannot maintain a conspiracy claim against the Postal Service

15   and the postal employees as a matter of law.  Employers and employees cannot conspire where the

16   employees act in their official capacities on behalf of the employer.  *Collins v. Union Fed. Sav. &*

17   *Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983); *see also Lapar v. Potter*, 395 F. Supp.2d 1152, 1157

18   (M.D. Fla. 2005) (dismissing a conspiracy claim under Rule 12(b)(6) because, as a matter of law,

19   no conspiracy could exist between the United States Postal Service and its agents).

20           Bishop's final cause of action is a conclusory, one sentence allegation.  Bishop

21   states: "The USPS Defendants conspired to discriminate, harass, retaliate as well as affect Kevin

22   Bishop's due process against Kevin Bishop as well as commit fraud, alter documents, destroy

23   documents through their conspiratorial conduct."  [sic] (Dkt. #95 Second Amend. Compl. 42 ¶

24   92.)  Bishop presents the Court with mere labels in "an unadorned, the-defendant-unlawfully-

25   harmed-me accusation," without pleading any facts establishing a plausible claim of conspiracy.

26   *Iqbal*, 129 S. Ct at 1949 (citing *Twombly*, 550 U.S. at 555).  From what the Court can discern from

AO 72
(Rev. 8/82)

Bishop's statements, he believes that any and every document that the Postal Service provides is doctored or fake.  This is not evidence or even factual assertion, but merely unfounded belief and conjecture.  Since employers and employees cannot conspire within the scope of employment in the legal sense and Bishop presents no evidence, the conspiracy claim must be dismissed under Rule 12(b)(6).

**IV.    Remaining Motions**

Various motions to dismiss remain and have not been directly addressed.  These motions seek dismissal of various federal employee defendants from Bishop's claims and one seeks relief for Bishop from providing a second copy of documents to the defendants.  However, Bishop's claims have been adjudicated either through dismissal or summary judgement in the above discussion.  Therefore the remaining motions are denied as moot.

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

AO 72
(Rev. 8/82)

1   **CONCLUSION**

2   Accordingly, and for good cause appearing,

3   IT IS HEREBY ORDERED that Potter's Motion to Dismiss (#102) is GRANTED

4   in part and DENIED in part.

5   IT IS FURTHER ORDERED that Potter's  Motion for Summary Judgment (#136)

6   is GRANTED as to the claims not already dismissed.

7   IT IS FURTHER ORDERED that the United States Postal Service's Motion to

8   Dismiss (#169) is DENIED as moot.

9   IT IS FURTHER ORDERED that the Federal Defendants' Motion to Dismiss

10  (#171) is DENIED as moot.

11  IT IS FURTHER ORDERED that Bishop's Motion to Seek Relief from Providing

12  Two Copies of Opposition/Response to USPS Defendants Motion for Summary Judgment (#192)

13  is DENIED as moot.

14  Because this order disposes of each of Bishop's claims, the Clerk of the Court is

15  instructed to close this case.

16  Dated: October 1, 2010

17

18  _____

19  **ROGER L. HUNT**
    **Chief United States District Judge**

20

21

22

23

24

25

26

AO 72
(Rev. 8/82)